# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### DOCKET NO. 3:11-cv-211-FDW-DCK

| | | |
|---|---|---|
| **JAMES ROBBIN CHAVIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **T.J. MAXX CORP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER is before the Court for initial review pursuant to 28 U.S.C. § 1915(e). Plaintiff, who is proceeding *pro se*, filed suit and a motion to proceed *in forma pauperis* ("IFP Motion") on April 29, 2011. Plaintiff's IFP Motion was granted on June 7, 2011. Because Plaintiff has failed to state a claim upon which relief can be granted, Plaintiff's Complaint must be DISMISSED in its entirety.

## I. BACKGROUND

Plaintiff seeks damages of "$2,500,000-$375,000,000" for two causes of action filed against T.J. Maxx Corporation, Danny Pellarim, the "HR Manager" of the T.J. Maxx distribution facility at which Plaintiff was employed, and against "co-conspirators" Annedra Young, Connie Lilly, and Alberto Mendez. Specifically, Plaintiff alleges he was terminated based on his sex, male, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and that Defendants defamed his character by making false allegations against him.

Plaintiff's primary claim is for discriminatory termination resulting from an allegedly false sexual harassment claim filed by Defendant Young against him. Plaintiff, a male, was employed at the T.J. Maxx distribution center at 14300 Carowinds Boulevard, Charlotte, North Carolina.

The Complaint is devoid of factual allegations, particularly as to the circumstances surrounding Plaintiff's termination and the allegations contained in Young's sexual harassment charge. Plaintiff instead focuses his attention on describing his version of what occurred between himself and a female named "Ne Ne" (presumably a nickname for Young). In support of his claims, Plaintiff includes a hand-written copy of a "formal complaint" Plaintiff filed with Defendant Pellarim alleging Plaintiff suffered sexual harassment at the hands of Ne Ne. The harassment charge is signed by Plaintiff but is not dated, except for a stamp acknowledging receipt by the Charlotte District Office of the Equal Employment Opportunity Commission ("EEOC") on October 19, 2010. Plaintiff alleges that he and Ne Ne spoke in the T.J. Maxx warehouse and arranged to have lunch in her car. During lunch, Ne Ne allegedly "said some disturbing and offense [sic] things," including sating that she "love[s] to fuck," moaning repeatedly, soliciting oral sex from Plaintiff, and referring to Plaintiff's genitalia in a sexually explicit manner. Plaintiff alleges he was shocked by this behavior and "abruptly" left Ne Ne's car.

Young also filed a sexual harassment charge against Plaintiff and the exact nature of events leading up to Plaintiff's termination remain unclear. Plaintiff's Complaint contains no allegations as to what Young alleged occurred. (See Doc. No. 1 at 10). The most straightforward summary of what occurred comes from a decision of the North Carolina Employment Security Commission ("ESC") which Plaintiff attached as an exhibit to his Complaint. On or about September 12, 2010, Plaintiff and Young agreed to meet at Young's car, apparently for the purpose of arranging a time to meet to engage in sexual intercourse. (Doc. No. 1-3 at 1). During the conversation, both parties apparently made sexually explicit statements to the other, but before firm arrangements were made, Plaintiff told Young that because he was married, their relationship could only be sexual in nature. (Id. at 2). This stipulation upset Young, who later filed a grievance against Plaintiff with T.J. Maxx.

(Id.)

Plaintiff was terminated after Young's version of events was corroborated by an unidentified coworker who witnessed the conversation. Plaintiff alleges he was not questioned before being terminated. Plaintiff alleges he was unfairly terminated without investigation simply because he was the male in the scenario and that women filing sexual harassment charges with T.J. Maxx are treated differently. (Doc. No. 1 at 5). There are no allegations contained in the Complaint concerning Defendants Lilly or Mendez.

Plaintiff filed suit using a form complaint made available to *pro se* plaintiffs filing employment discrimination claims, as well as an IFP Motion, on April 29, 2011. Plaintiff's IFP Motion was initially denied after the Court concluded that Plaintiff had sufficient funds for discretionary spending to cover the $350.00 filing fee. (Doc. No. 5). Plaintiff filed an amended IFP Motion, which adjusted his reported monthly expenses upward, but did not give a reason for the discrepancy. (Doc. No. 6). This too was denied. (Doc. No. 8). Plaintiff's IFP Motion was finally granted on June 7, 2011, after Plaintiff filed a motion for reconsideration explaining that his initial report of income and expenses was based only on a rough estimate. (Doc. No. 11). The Clerk was directed not to issue process in this matter until the Court had an opportunity to conduct an initial review pursuant to § 1915(e). This review followed.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss an *in forma pauperis* ("IFP") complaint if "the action . . . (i) is frivolous or malicious" or if the action "(ii) fails to state a claim upon which relief may be granted." A district court has broad discretion to police IFP filings to prevent abuse of the statute. See Nagy v. FMC Butner, 376 F.3d 252, 255, 257 (4th Cir. 2004); see also Michau v. Charleston County, S.C., 434 F.3d 725, 728 (4th Cir. 2006) (noting that 28 U.S.C.A.

3

§ 1915(e) applies to all IFP filings, not just those filed by prisoners).  Indeed, "to provide free access to the courts without overwhelming the efficient administration of justice with meritless cases, the system relies primarily on the judgment of the district courts to permit suits that are arguably meritorious and to exclude suits that have no arguable basis in law or fact." <u>Nasim v. Warden, Maryland House of Corr.</u>, 64 F.3d 951, 954 (4th Cir. 1995).

"In evaluating a case under § 1915, a court may look to cases decided under Fed. R. Civ. P. 12(b)(6) for guidance." <u>Bullock v. Beasley & Allen</u>, 2009 WL 2827950, at *2  (E.D.N.C. Aug. 28, 2009).  To survive dismissal under Rule 12(b)(6), Plaintiff's Complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  A sufficient complaint "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Id.</u> (internal quotations omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. <u>Id.</u> (citations omitted).

Although the Court remains mindful that *pro se* filings, "however inartfully pleaded," are to be liberally construed, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), Plaintiff's Complaint fails to adequately state a claim upon which relief can be granted, and therefore must be dismissed.

Plaintiff seeks first to recover for what amounts to a claim of discriminatory discipline in violation of Title VII, which prohibits employers from "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

4

Absent direct evidence of discrimination, of which Plaintiff has presented none, in order to state a plausible Title VII claim, Plaintiff's complaint must contain sufficient factual allegations to make out a prima facie case of discrimination by showing:

> (1) that he is a member of a protected class [i.e. male], (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

Taylor v. CNA Corp., No. 1:10-cv-181, 2010 WL 3430911 (E.D. Va. Aug. 27, 2010) (slip copy) (citation omitted). While the distinction between a discriminatory discipline and discriminatory discharge claim may be somewhat arbitrary, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (noting "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic" (citation omitted)), the ultimate question in any Title VII case is whether a plaintiff has pled sufficient factual material that would properly give rise to an inference that an adverse employment action–discipline, termination, or other–was motivated by an unlawful discriminatory animus. See, e.g., Bryant v. Aiken Reg. Med. Ctrs., Inc., 333 F.3d 536, 544-45 (4th Cir. 2003).

Although Plaintiff conclusorily alleges that he was unfairly disciplined by being terminated, because of his sex, Plaintiff's Complaint does not assert any facts establishing the plausibility of that allegation. Specifically, Plaintiff provides no basis for determining that similarly-situated women were treated differently than Plaintiff, nor has Plaintiff alleged anything from which the Court may infer a connection between Plaintiff's termination and his gender. Plaintiff alleges that he was terminated for "being a male in a false sexual harassment claim," and in support of this principal claim alleges that he has proof that women filing sexual harassment charges with T.J. Maxx were treated differently than men filing charges, such as himself. (Doc. No. 1 at 4). Plaintiff does not

include any allegations of such proof in his Complaint. Inexplicably, and without context, Plaintiff includes an affidavit signed by Robert Paris, also a T.J. Maxx distribution center employee, stating that a charge filed by Paris against a Sandra Price in August 2009 was "brought to the attention" of Pellarim, but was never investigated. (Id. at 11). Although Paris' affidavit suggests that Paris' charge has handled by Pellarim similarly to Plaintiff's complaint against Ne Ne, as alleged in Plaintiff's Complaint, it provides no plausible basis to infer that men and women are treated differently. In fact, aside from Plaintiff's conclusory statement, there is no factual basis, contained either in the Complaint or in any accompanying materials, from which to infer that men were treated differently than women at all.

Apparently in an attempt to corroborate his allegations, Plaintiff also includes as an exhibit to his Complaint the decision of the ESC, which held that Plaintiff was entitled to unemployment benefits because T.J. Maxx "failed to prove that Ms. Young was an innocent victim in the chain of events that led to the claimant's termination." (Doc. No. 1-3 at 2). However, the veracity of Plaintiff's allegations are not at issue at this stage of the proceeding, but rather the focus is on the sufficiency of Plaintiff's pleadings. Whatever Plaintiffs's purpose in including the ESC decision, the ESC's determination that Plaintiff was not disqualified from unemployment benefits does not provide a basis from which the Court may infer that Plaintiff's termination was in any way connected to his gender. Nor does it provide any allegations of what discipline, or lack of discipline, Young or any other females charged with sexual harassment may have faced. Even if it did aid Plaintiff in stating a claim for relief, findings of fact or law, judgments, determinations, conclusions, or final orders made by the ESC are "not admissible or binding in any separate or subsequent action or proceeding, between a person and his . . . previous employer brought before an arbitrator, court or judge of this State or the United States . . . ." N.C. Gen. Stat. § 96-4(t)(8) (2007).

Simply put, Plaintiff's Complaint contains no factual allegations but relies on unadorned allegations that he was harmed by Defendants. Accordingly, Plaintiff has failed to present any factual allegations that would give rise to an inference either that women engaged in the same type of prohibited conduct as Plaintiff did, but were treated differently, or that would tie Plaintiff's termination to his gender. Because Plaintiff has failed to allege sufficient facts to allow the Court to infer Defendants' liability, Plaintiff has failed to state a claim to relief that is plausible on its face. Plaintiff's Title VII claim must be DISMISSED.

Additionally, the Court will decline to exercise supplemental jurisdiction over Plaintiff's defamation claim. No independent basis exists for the Court to assert original jurisdiction over this claim.[1] Defamation, as a tort existing at common law, arises under state law. See Hugger v. Rutherford Inst., 63 Fed. App'x 683, 691 (4th Cir. 2003); 20 Strong's North Carolina Index 4th Libel and Slander § 1(2011). Thus, this Court may have original subject matter jurisdiction only pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332,[2] which provides jurisdiction over all civil actions, including state law actions, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests of costs and is between [] citizens of different States . . . ." To satisfy this statute, each Defendant, including corporations, must be citizens of a different state than Plaintiff. See, e.g., Exxon Mobil Corp. v. Allapattah Serv., Inc., 545 U.S. 546, 553-54 (2005).

---

[1] Subject-matter jurisdiction involves the Court's power to hear a case and thus the Court has an independent obligation to determine whether it has jurisdiction to consider the merits of a case "even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citation omitted).

[2] Although it is well-established that federal courts enjoy federal question jurisdiction pursuant to 28 U.S.C. § 1331 over some state law claims, the scope of jurisdiction has been limited to those claims that "'really and substantially involv[e] a dispute or controversy respecting the validity, construction, or effect of [federal] law.'" Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) (quoting Shulthis v. McDougal, 225 U.S. 561, 569 (1912)). Plaintiff has not asserted any claims that implicate the validity, construction, or effect of federal law.

Because Plaintiff, who bears the burden of establishing diversity of citizenship, has failed to allege any facts establishing the Defendants' citizenship and none appear from the record, diversity has not been satisfied. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . . It is to be presumed that a cause lies outside the limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (citations omitted)).

Without an appropriate basis for original subject matter jurisdiction over Plaintiff's defamation claim, the Court may only consider Plaintiff's defamation claim under the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a) (1990). However, because the Court has dismissed Plaintiff's Title VII claim, which invoked the original jurisdiction of this Court, the Court will exercise its discretion and decline to assert supplemental jurisdiction over Plaintiff's state-law defamation claim. See § 1367(c) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); see also Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1866-67 (2009). Plaintiff's defamation claim is therefore DISMISSED for lack of subject matter jurisdiction.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Complaint is DISMISSED in its entirety pursuant to 28 U.S.C. § 1915(e). Plaintiff's Complaint fails to state a claim upon which relief can be granted.

The Clerk is directed to close this case and send a copy of this Order to Plaintiff at his address of record.

IT IS SO ORDERED.

Signed: August 15, 2011

Graham C. Mullen
United States District Judge